1 ROBBINS GELLER RUDMAN
   & DOWD LLP
2 DAVID T. WISSBROECKER (243867)
   EDWARD M. GERGOSIAN (105679)
3 655 West Broadway, Suite 1900
   San Diego, CA 92101
4 Telephone: 619/231-1058
   619/231-7423 (fax)
5 dwissbroecker@rgrdlaw.com
   egergosian@rgrdlaw.com
6
   Attorneys for Plaintiff
7
   [Additional counsel appear on signature page.]
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

11 MIGUEL HUSSEY, Individually and on      )   Case No.
   Behalf of All Others Similarly Situated,  )
12                                          )   CLASS ACTION
                             Plaintiff,     )
13                                          )   COMPLAINT FOR VIOLATIONS
          vs.                               )   OF §14 OF THE SECURITIES
14                                          )   EXCHANGE ACT OF 1934
   RUCKUS WIRELESS, INC., BROCADE           )
   COMMUNICATIONS SYSTEMS, INC.,            )
15 STALLION MERGER SUB INC., SELINA Y. )
   LO, SEAMUS HENNESSY, GAURAV              )
16 GARG, MOHAN GYANI, GEORGES               )
   ANTOUN, RICHARD LYNCH, STEWART           )
17 GRIERSON and BARTON BURSTEIN,            )
                                            )
18                           Defendants.    )
                                            )   DEMAND FOR JURY TRIAL
19 _____ )

20

21

22

23

24

25

26

27

28

1   Plaintiff Miguel Hussey, individually and on behalf of all others similarly situated, by the
2   undersigned counsel, alleges the following based upon information and belief, except for plaintiff's
3   own acts, which are alleged on knowledge, and upon a continuing investigation conducted by and
4   through plaintiff's counsel and retained expert consultant into the facts and circumstances alleged
5   herein, which included, without limitation, review and analyses of: (i) the public filings of Ruckus
6   Wireless, Inc. ("Ruckus" or the "Company") and Brocade Communications Systems, Inc. ("Parent")
7   with the U.S. Securities and Exchange Commission ("SEC"); (ii) press releases, public statements,
8   analyst reports, news articles and other publications disseminated by or concerning Ruckus, Parent,
9   their respective related entities and the Proposed Acquisition (as defined below); and (iii) the
10  corporate websites of Ruckus and Parent.

## SUMMARY OF THE ACTION

11
12  1.   Plaintiff brings this shareholder class action individually and on behalf of the other
13  public shareholders of Ruckus against Ruckus, its Board of Directors (the "Board"), Seamus
14  Hennessy, Ruckus's Chief Financial Officer ("Hennessy," and with the Board, the "Individual
15  Defendants"), Parent, a Delaware corporation, and Stallion Merger Sub Inc., a Delaware corporation
16  and a wholly owned subsidiary of Parent ("Purchaser," and with Parent, "Brocade"), for violations
17  of: (i) §14(e) of the Securities Exchange Act of 1934 ("1934 Act") against the Individual Defendants
18  and Ruckus in connection with the Solicitation/Recommendation Statement on Schedule 14D-9 filed
19  with the SEC on April 29, 2016 (the "14D-9"); and (ii) §14(d)(7) of the 1934 Act and Rule 14d-10
20  promulgated thereunder against Ruckus, the Individual Defendants and Brocade for differential
21  consideration to be received by the Individual Defendants from the Proposed Acquisition of Ruckus
22  by Brocade.  This action arises out of Brocade's efforts to acquire the outstanding common stock of
23  Ruckus for $6.45 in cash and 0.75 shares of Parent common stock per Ruckus share (the "Proposed
24  Acquisition") via an exchange offer (the "Exchange Offer").
25  2.   Ruckus delivers wireless in challenging indoor and outdoor environments for more
26  than 65,300 enterprise, service provider, government and small business customers worldwide.  On
27  April 4, 2016, Ruckus and Brocade announced a definitive merger agreement (the "Merger
28  Agreement") under which Ruckus would be acquired by Brocade via the Exchange Offer.

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934           - 1 -

3.      The Exchange Offer, pursuant to the Merger Agreement, was launched by Purchaser on April 29, 2016, to purchase all of the outstanding shares of Ruckus for $6.45 in cash and 0.75 shares of Parent common stock.  The Exchange Offer will expire on May 27, 2016, unless extended, which Brocade is required to do (in successive 10-day extensions) until such time as the Registration Statement on Form S-4 ("S-4") filed by Brocade is declared effective by the SEC.  Following the completion of the Exchange Offer, Purchaser will be merged with and into the Company (the "Merger"), and Ruckus will be a wholly owned subsidiary of Parent.

4.      The Proposed Acquisition is the product of a hopelessly flawed process that is designed to ensure the sale of Ruckus to Brocade on terms preferential to defendants and other Ruckus insiders and to subvert the interests of plaintiff and the other public stockholders of the Company.   The Proposed Acquisition is being driven by the Company's current Board and management, who collectively hold 8.5% of Ruckus's outstanding shares (over 7.6 million shares). The Board and other Company insiders seek liquidity for their illiquid holdings in Ruckus stock, and the Proposed Acquisition offers significant liquidity for their illiquid Ruckus shares.  If the Proposed Acquisition closes, the Board and Company management will receive almost ***$50 million*** in cash alone from the sale of shares owned as of the date of the Merger Agreement.

5.      As alleged herein, Brocade has promised different and increased consideration to the Individual Defendants in violation of §14(d)(7) of the 1934 Act and Rule 14d-10 promulgated thereunder.  From the Proposed Acquisition, Ruckus's officers and directors will receive ***millions of dollars*** in special payments – not being made to ordinary shareholders – for currently vested and unvested stock options, performance shares and restricted stock.   Critically, while Ruckus's shareholders will be forced to take uncollared Parent stock for about 50% of the per share consideration they will receive for their Ruckus shares, members of the Board and Company management will receive ***all cash*** for their vested stock options.

6.      Moreover, the Board allowed defendants Selina Y. Lo (President, Chief Executive Officer and a director of the Company) and Hennessy to negotiate offer letters with Brocade that provide both with continued employment at Brocade following the closing of the Merger.  The offer letters also give defendants Lo and Hennessy additional special benefits in the form of immediate

and accelerated vesting of 50% of their restricted and performance stock units and acceleration of vesting of the other 50%, *all of which will be paid to defendants Lo and Hennessy in cash*.

7.    The Company's senior management is also entitled to receive from the Proposed Acquisition *$19.5 million* more in change-of-control payments.  All told, if the Proposed Acquisition closes, the Board and Company management will receive almost *$70 million*.  Thus, Board members are conflicted and serving their own financial interests rather than those of Ruckus's other shareholders.

8.    Motivated by the prospect of receiving almost *$70 million in cash* from a deal with Brocade, defendants agreed to the Proposed Acquisition in order to receive differential consideration in violation of §14(d)(7) of the 1934 Act and Rule 14d-10 promulgated thereunder.

9.    The Board also hired a conflicted financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").  The Board agreed to pay Morgan Stanley an $18.7 million fee that is *wholly contingent* on the closing of the Merger.  Moreover, according to a Form 13-F that Morgan Stanley filed with the SEC on May 12, 2016, as of March 31, 2016, Morgan Stanley and its affiliates owned over 3.67 million shares of Parent common stock and held $9.762 million in Parent notes.

10.    In return for her offer letter from Brocade, concurrently with the execution of the Merger Agreement, defendant Lo entered into a tender and support agreement with Parent and Purchaser (the "Tender and Support Agreement"), pursuant to which, among other things, and subject to the terms and conditions therein,  defendant Lo agreed to tender all shares beneficially owned by her into the Exchange Offer.

11.    The flawed and conflicted sales process resulted in an unfair price for Ruckus's public shareholders.  The Proposed Acquisition consideration drastically undervalues the Company and its prospects.  Based on the closing price of Parent stock the day before the Proposed Acquisition was announced ($10.64), the Proposed Acquisition consideration was valued at just $14.43 per Ruckus share.  But defendants failed to obtain a collar on the stock portion of the Proposed Acquisition consideration, and on the day the deal was announced, Parent common stock closed down sharply at $9.19 per share, reducing the value of the Proposed Acquisition consideration that first day to $13.34 per share.  The market price of Parent common stock has

1  collapsed even further, and is currently trading at around $8.15 per share, reducing the current value

2  of the Proposed Acquisition to a mere $12.56 per Ruckus share.  The value of the Proposed

3  Acquisition consideration is almost $1 below Ruckus common stock's October 9, 2015 52-week

4  trading high of $13.50 per share, and is well below at least one analyst's high price target of $15.00

5  per share.

6       12.  The Proposed Acquisition is being driven by the Board and members of management

7  to secure material benefits for themselves as a result of the Proposed Acquisition, including the

8  accelerated vesting and monetization of illiquid equity holdings in the Company and change-of-

9  control severance payments, which will provide almost ***$70 million*** in cash alone to the Board and

10  members of Ruckus's management.

11       13.  The Tender and Support Agreement, together with a host of other preclusive deal

12  protection devices defendants have agreed to as part of the Merger Agreement, make the Proposed

13  Acquisition a *fait accompli*.  The deal protection devices, which serve only to preclude alternative

14  bids for Ruckus, include: (i) a "no-solicitation" provision; (ii) an illusory "fiduciary out" provision;

15  (iii) an "information rights" provision; (iv) a "matching rights" provision; and (v) a $50 million

16  "termination fee" provision.

17       14.  To make matters worse, and as described below, the 14D-9 defendants filed with the

18  SEC contains material omissions and/or misstatements in contravention of §14(e) of the 1934 Act.

19  The 14D-9, which recommends that Ruckus shareholders tender their shares to Brocade, includes

20  material omissions and/or misstatements concerning the potential and/or actual conflicts of interest

21  present in the process leading to the Proposed Acquisition, the Company's inherent value, and the

22  fairness analyses performed by the Company's financial advisor, Morgan Stanley.  Without this

23  material information, Ruckus shareholders are prevented from making a fully informed decision as

24  to the adequacy of the Exchange Offer and whether to tender their shares.

25       15.  In essence, the Proposed Acquisition is the product of a hopelessly flawed process

26  that was designed to ensure the merger of Ruckus with Brocade on terms preferential to Brocade and

27  defendants, and detrimental to plaintiff and Ruckus's shareholders.  By providing the Individual

28  Defendants with differential consideration, defendants are violating §14(d)(7) of the 1934 Act.  In

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934          - 4 -

1  disseminating a materially false and misleading 14D-9, the Individual Defendants and Ruckus are

2  violating §14(e) of the 1934 Act.

3      16.    Defendants are moving quickly to consummate the Proposed Acquisition. ***According***

4  ***to defendants, the Exchange Offer will expire on May 27, 2016***.  Moreover, the deal protection

5  devices operate to block any other potential acquirers, rendering unlikely any alternative proposals to

6  acquire Ruckus.  Consequently, immediate judicial intervention is warranted here to rectify existing

7  and future irreparable harm to the Company's shareholders.

8      17.    Plaintiff seeks to enjoin the Proposed Acquisition.

9  **JURISDICTION AND VENUE**

10      18.    Plaintiff's claims arise under §§14(e) and 14(d)(7) of the 1934 Act and Rule 14d-10

11  promulgated thereunder.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §27 of the

12  1934 Act, 15 U.S.C. §78aa.  Defendants used the U.S. mails and the instrumentalities of interstate

13  commerce.

14      19.    Venue is proper here pursuant to §27 of the 1934 Act, 15 U.S.C. §78aa, because

15  Ruckus is headquartered in this District and certain of the transactions, acts, practices and courses of

16  conduct constituting the violations alleged herein occurred within this District.

17  **THE PARTIES**

18      20.    Plaintiff Miguel Hussey is, and at all times relevant hereto was, a shareholder of

19  Ruckus, as set forth in the certification attached hereto.

20      21.    Defendant Ruckus is a Delaware corporation, headquartered in Sunnyvale, California.

21      22.    Defendant Parent is a Delaware corporation headquartered in San Jose, California.

22      23.    Defendant Purchaser is a Delaware corporation and a wholly owned subsidiary of

23  Parent.

24      24.    Defendant Lo is, and at all relevant times has been, President, Chief Executive

25  Officer and a director of the Company.

26      25.    Defendant Hennessy is, and at all relevant times has been, Chief Financial Officer of

27  the Company.

28      26.    Defendant Gaurav Garg is, and at all relevant times has been, a member of the Board.

1      27.    Defendant Mohan Gyani is, and at all relevant times has been, a member of the
2  Board.

3      28.    Defendant Georges Antoun is, and at all relevant times has been, a member of the
4  Board.

5      29.    Defendant Richard Lynch is, and at all relevant times has been, a member of the
6  Board.

7      30.    Defendant Stewart Grierson is, and at all relevant times has been, a member of the
8  Board.

9      31.    Defendant Barton Burstein is, and at all relevant times has been, a member of the
10  Board.

11      32.    The defendants named above in ¶¶24-31 are sometimes collectively referred to herein
12  as the "Individual Defendants."

<b>THE PROPOSED ACQUISITION</b>

**Background**

15      33.    Ruckus delivers wireless for more than 65,300 enterprise, service provider,
16  government and small business customers worldwide.  The Company is focused on technology
17  innovation, partner ecosystems and customer service – yielding the best possible wireless experience
18  for the most challenging indoor and outdoor environments.  Its Smart Wi-Fi platform delivers
19  scalable, high-performance Wi-Fi with simplified control and management for on-premise and
20  cloud-based Wi-Fi deployments, along with new services for secure on-boarding, policy
21  management, location services and analytics that enable new business opportunities.

22      34.    Brocade is a leading supplier of networking hardware, software and services,
23  including Storage Area Networking solutions and Internet Protocol Networking solutions for
24  businesses and organizations of various types and sizes.  Brocade's end customers include global
25  enterprises and other organizations, which use the Company's products and services as part of their
26  communications infrastructure, and service providers, such as telecommunication firms, cable
27  operators and mobile carriers, which use the Company's products and services as part of their
28  commercial operations.

**Brocade's Offers and Ruckus's Counter-Offers**
**Leading to the Proposed Acquisition**

35.     During the process leading to the Proposed Acquisition, Ruckus received from Brocade a number of proposals to acquire all of the outstanding Ruckus shares.  Ruckus also made a number of counter-offers, as detailed below.  Early in the process, the Board rejected a Brocade offer valued at $13.00 per share as not "robust" enough to engage in discussions with Brocade. Ultimately, however, and due to the Board's unexplained failure to insist upon a collar on the stock portion of the Proposed Acquisition consideration, the Board agreed to sell the Company to Brocade for consideration that is now valued at a mere $12.56 per share.

36.     On January 27, 2016, Brocade offered to acquire each outstanding Ruckus share for $6.00 in cash and 0.75 shares of Parent stock (valued at the time of the offer at $12.00 per Ruckus share).  In reviewing the January 27, 2016 offer, the Board noted the stock component was more valuable than the cash because Parent was undervalued.  The Board rejected the January 27, 2016 offer, and Brocade refused to counter.  By February 12, 2016, the value of the January 27, 2016 offer was below $12.00 per Ruckus share.

37.     By February 18, 2016, the value of the January 27, 2016 offer was up to $13.00 per Ruckus share.  But the Board did not feel the January 27, 2016 offer, at $13.00 per share, was "sufficiently robust" to engage in discussions with Brocade about a potential transaction.

38.     On February 21, 2016, Ruckus issued a counter-offer to Brocade to sell the Company for $8.00 in cash and 0.75 shares of Parent stock (valued at the time of the counter-offer at $15.19 per Ruckus share).

39.     On February 26, 2016, Brocade offered to acquire Ruckus for $6.25 in cash and 0.75 shares of Parent stock (valued at the time of the offer at $13.19 per Ruckus share, $2 below Ruckus's February 21, 2016 counter-offer).

40.     Three days later, on February 29, 2016, the Board authorized a counter-offer to Brocade of $7.00 in cash and 0.75 shares of Parent stock (valued at the time the Board authorized the counter-offer at $14.45 per Ruckus share).  Ruckus made this counter-offer to Brocade on March 4, 2016 (valued at the time the counter-offer was made at $14.68 per Ruckus share).  On March 9,

1 | 2016, Brocade gave Ruckus its best and final offer (which the Board accepted that day) of $6.45 in

2 | cash and 0.75 shares of Parent common stock (valued at the time of the offer at $14.06 per Ruckus

3 | share).  Presently, however, the value of the Proposed Acquisition consideration is just $12.56 per

4 | Ruckus share.

5      41.    Despite clear evidence that the Board knew the market price of Parent stock was

6 | highly volatile from January through March 2016, the Board failed to insist on a collar that would

7 | have protected the value Ruckus shareholders would receive in the Proposed Acquisition given the

8 | volatility of Parent's share price.  The Board's failure to insist on a collar resulted in Ruckus

9 | shareholders receiving an offer of less value than the offer that the Board in mid-February had

10 | thought was not robustly sufficient enough for them to engage in discussions about ($13.00 per

11 | Ruckus share).

12 | **The Proposed Acquisition Is Announced**

13      42.    Ruckus and Brocade announced on April 4, 2016 that they had entered into the

14 | Merger Agreement.  The press release containing the announcement states in pertinent part:

### Brocade to Acquire Ruckus Wireless to Build a Networking Company for the Digital Transformation Era

\*    \*    \*

- Brocade increases stock repurchase authorization by $800 million

. . . Brocade and Ruckus Wireless today announced that Brocade has entered into a definitive agreement to acquire Ruckus Wireless, Inc. in a cash and stock transaction.  The acquisition will complement Brocade's enterprise networking portfolio, adding Ruckus' higher-growth, wireless products to Brocade's market-leading networking solutions.  It will also significantly strengthen Brocade's strategic presence in the broader service provider space, with Ruckus' market-leading Wi-Fi position.  Brocade expects the transaction to be accretive to its non-GAAP earnings by its first quarter of fiscal 2017.  The Ruckus organization will be led by current Ruckus CEO, Selina Lo, and report directly to Brocade CEO, Lloyd Carney.

Under the terms of the agreement, Ruckus stockholders will receive $6.45 in cash and 0.75 shares of Brocade common stock for each share of Ruckus common stock.  Based on the closing price of Brocade's stock on April 1, 2016, the transaction values Ruckus at a price of $14.43 per common share, or approximately $1.5 billion, and may fluctuate until close.  Net of estimated cash acquired, the transaction value is approximately $1.2 billion.  The cash portion of the purchase price will be funded through a combination of cash on hand and new bank term loan financing.

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934    - 8 -

As companies move to digitize their business, they need an underlying network architecture that supports business agility.  This New IP architecture enables the network to become a platform for innovation and for developing, delivering, and securing new applications.   Wireless is a critical access technology and the combination of Brocade and Ruckus creates a new type of pure-play networking company, with solutions spanning from the heart of the data center to the wireless network edge.  In addition, after close, the acquisition is expected to accelerate cross-selling activities into the respective companies' partner and customer bases, opening up new revenue opportunities for the combined company across a variety of verticals, including large enterprises, K-12 and higher education, government, hospitality, and service providers.

Further, the acquisition will strengthen Brocade's ability to pursue emerging market opportunities around 5G mobile services, Internet of Things (IoT), Smart Cities, OpenG™ technology for in-building wireless, and LTE/Wi-Fi convergence.  Brocade and Ruckus believe that the integration of Wi-Fi and the use of shared access or lightly licensed spectrum are critical to meeting the ever-growing demand for coverage, capacity, and consistency required for next-generation mobile services.  These elements are important in Brocade's strategy to disrupt and enhance the way edge services are created and delivered.

"This strategic combination will position us to expand our addressable market and technology leadership with Ruckus' fast-growing wireless LAN products, and supports our vision to deliver market-leading New IP solutions that enable the network to become a platform for innovation," said Lloyd Carney, chief executive officer of Brocade.  "History shows that focused, pure-play companies often innovate faster, are more agile, and deliver better value to their customers.  With the rapidly evolving requirements of the digital transformation era, we are positioning ourselves to lead where technology is headed.  We believe that combining our portfolios will provide significant benefits to our customers and will enable us to accelerate our growth and value creation."

"The combination of our two companies will create an exciting new thought leader in networking and significant opportunities for our stakeholders to participate in the combined company's future growth potential," said Selina Lo, president and CEO of Ruckus.  "We operate in adjacent segments of the larger networking market with a number of common customers for our complementary products, and have a successful track record of working together.  We are excited for the opportunity to join the Brocade team and to jointly deliver innovative, value-added solutions to our enterprise and service provider customers."

The acquisition will be conducted by means of an exchange offer for all of the outstanding shares of Ruckus.  The completion of the exchange offer is subject to customary conditions, including reviews by U.S. and international antitrust regulators and the tender of a majority of the outstanding shares of Ruckus' common stock.  The companies expect the transaction, which has been approved by both companies' boards of directors, to close in Brocade's third fiscal quarter of 2016.

43.    The Exchange Offer, pursuant to the Merger Agreement, was launched by Purchaser on April 29, 2016, to purchase all of the outstanding shares of Ruckus for $6.45 in cash and 0.75 shares of Parent common stock per Ruckus share  The Exchange Offer will expire on May 27, 2016, unless extended, which Brocade is required to do (in successive 10-day extensions) until such time

1  as the S-4 is declared effective by the SEC.  Following the completion of the Exchange Offer,

2  Purchaser will be merged with and into the Company, and Ruckus will be a wholly owned subsidiary

3  of Parent.

4  **Conflicts Poisoned the Process Leading to the Proposed Acquisition**

5        44.    The Proposed Acquisition is the product of a hopelessly flawed process that is

6  designed to ensure the sale of Ruckus to Brocade on terms preferential to defendants and other

7  Ruckus insiders and to subvert the interests of plaintiff and the other public stockholders of the

8  Company.  The Proposed Acquisition is being driven by the Company's current Board and

9  management, who collectively hold 8.5% of Ruckus's outstanding shares (over 7.6 million shares).

10  The Board and other Company insiders seek liquidity for their illiquid holdings in Ruckus stock, and

11  the Proposed Acquisition offers significant liquidity for their illiquid Ruckus shares.  If the Proposed

12  Acquisition closes, the Board and Company management will receive almost ***$50 million*** in cash

13  alone from the sale of shares owned as of the date of the Merger Agreement.

14        45.    As alleged herein, Brocade has promised different and increased consideration to the

15  Individual Defendants – in violation of §14(d)(7) of the 1934 Act and Rule 14d-10 promulgated

16  thereunder.  From the Proposed Acquisition, Ruckus's officers and directors will receive ***millions of***

17  ***dollars*** in special payments – not being made to ordinary shareholders – for currently vested and

18  unvested stock options, performance shares and restricted stock.  Critically, while Ruckus's

19  shareholders will be forced to take uncollared Parent stock for about 50% of the per share

20  consideration they will receive for their Ruckus shares, members of the Board and Company

21  management will receive ***all cash*** for their vested stock options.

22        46.    Moreover, the Board allowed defendants Lo and Hennessy to negotiate offer letters

23  with Brocade that provide both with continued employment at Brocade following the closing of the

24  Merger.  The offer letters also give defendants Lo and Hennessy additional special benefits in the

25  form of immediate and accelerated vesting of 50% of their restricted and performance stock units,

26  and acceleration of vesting of the other 50%, ***all of which will be paid to defendants Lo and***

27  ***Hennessy in cash***.

28

47.     The Company's senior management is also entitled to receive from the Proposed Acquisition **$19.5 million** more in change-of-control payments.  All told, if the Proposed Acquisition closes, the Board and Company management will receive almost **$70 million**.  Thus, Board members are conflicted and serving their own financial interests rather than those of Ruckus's other shareholders.

48.     Motivated by the prospect of receiving almost **$70 million in cash** from a deal with Brocade, defendants agreed to the Proposed Acquisition in order to receive differential consideration in violation of §14(d)(7) of the 1934 Act and Rule 14d-10 promulgated thereunder.

49.     The Board also hired a conflicted financial advisor – Morgan Stanley.  The Board agreed to pay Morgan Stanley an $18.7 million fee that is **wholly contingent** on the closing of the Merger.  Moreover, according to a Form 13-F that Morgan Stanley filed with the SEC on May 12, 2016, as of March 31, 2016, Morgan Stanley and its affiliates held over 3.67 million shares of Parent common stock and held $9.762 million in Parent notes.

**These Unresolved and Unaddressed Conflicts
Led to an Unfair Process**

50.     As set forth above, throughout the process, defendants favored the interests of Brocade and the Board and Company management over the interests of Ruckus's public shareholders.  The Board accepted Brocade's final offer to acquire Ruckus for the unfair price of just $6.45 in cash and 0.75 shares of Parent common stock for each Ruckus share, without insisting upon a collar on the stock portion of the Proposed Acquisition consideration, and, while knowing of Morgan Stanley's conflict (presented by 3.67 million Parent shares it and its affiliates own), accepted Morgan Stanley's fairness analyses in approving the deal to sell Ruckus to Brocade.

51.     Moreover, as part of this unfair process, in return for accepting an unfair price and not insisting upon a collar, the Board agreed for themselves and the other Individual Defendants to receive from the Proposed Acquisition, in violation of §14(d)(7) of the 1934 Act and Rule 14d-10 promulgated thereunder, different consideration than will be received by Ruckus's public shareholders.  Specifically, while Ruckus shareholders are being forced to take about 50% of the Proposed Acquisition consideration in uncollared Parent stock, the Board members will receive all

1 cash for their vested stock options, and defendants Lo and Hennessey will also receive all cash for

2 their unvested restricted and performance stock units.

3      52.    Thus, the conflicted and unfair process benefited only Brocade and the Board and

4 Company management. In approving such an unfair deal, the Board members handed Ruckus to

5 Brocade for an unfair price, while giving themselves different consideration than will be received by

6 the Company's public shareholders, in violation of §14(d)(7) of the 1934 Act and Rule 14d-10

7 promulgated thereunder. Moreover, as part of the process, defendants have prepared and filed with

8 the SEC the false and misleading 14D-9 in violation of §14(e) of the 1934 Act.

9 **The Conflicted and Unfair Process Resulted in an Unfair Price**

10      53.    This flawed and conflicted process resulted in an unfair price for Ruckus's public

11 shareholders. The Proposed Acquisition consideration drastically undervalues the Company and its

12 prospects. First, based on the closing price of Parent stock the day before the Proposed Acquisition

13 was announced ($10.64), the Proposed Acquisition consideration was valued at just $14.43 per

14 Ruckus share. But defendants failed to obtain a collar on the stock portion of the Proposed

15 Acquisition consideration, and on the day the deal was announced, Parent common stock closed

16 down sharply at $9.19 per share, reducing the value of the Proposed Acquisition consideration that

17 first day to $13.34 per share. The market price of Parent common stock has collapsed even further,

18 and is currently trading at around $8.15 per share, reducing the current value of the Proposed

19 Acquisition to a mere $12.56 per Ruckus share. The value of the Proposed Acquisition

20 consideration is almost $1 below Ruckus common stock's October 9, 2015 52-week trading high of

21 $13.50 per share, and is well below at least one analyst's high price target of $15.00 per share.

22      54.    Second, Morgan Stanley's valuation analyses are speculative and are not founded on

23 sound practice. Moreover, the 14D-9 lacks specific information required to explain the basis and

24 rationale for certain of Morgan Stanley's analyses, which is fundamental to understanding the work

25 performed by Ruckus's financial advisor in this instance.

26      55.    Morgan Stanley does not appear to have valued Parent on a standalone basis. If it did

27 perform standalone valuations of Parent, descriptions of the inputs and results were not disclosed in

28

1    the 14D-9.  This is an inexcusable and material omission as the majority of the Proposed Acquisition

2    consideration is in the form of Parent common stock.

3         56.    Morgan Stanley compounds this error by calculating values for the "Offer

4    Consideration" that were speculative in nature and pure conjecture on its part.  The "Offer

5    Consideration" is defined as 0.75 shares of Parent stock and $6.45 in cash for each share of

6    Ruckus.  On the date before the Merger was announced, this equated to a value of $14.43 per

7    share.  Relying on financial engineering and assuming the realization of uncertain and unknown

8    synergies, Morgan Stanley attempts to re-value the Offer Consideration at between $15.95 and

9    $25.18 per share under a *Discounted Cash Flow Analysis* (14D-9 at 37-38) and $15.00 to $19.04 per

10   share under a *Discounted Equity Value Analysis* (*id.* at 39-40).  These analyses rely on the realization

11   of synergies, the value and timing of which are currently uncertain.  For reference purposes, Parent

12   stock, which would be by far the largest component of the new company, has not traded above

13   $15.00 per share since 2002.

14        57.    Morgan Stanley deployed this highly inaccurate depiction of valuation, however,

15   because its own *Discounted Cash Flow Analysis* for Ruckus on a standalone basis using the

16   Management Case Forecasts (the middle case) was $14.57 to $21.10 per share, which is well in

17   excess of the $14.43 per share being delivered to Ruckus shareholders through the Merger.  And as

18   noted above, because the market price of Parent common stock has fallen by $2.50 per share, the

19   value that Ruckus shareholders will receive is now at $12.56 per Ruckus share.

20        58.    While Morgan Stanley's *Comparable Companies Analysis* derived values for Ruckus

21   which ranged from $7.83 to $11.22 per share, this analysis was flawed and therefore misleading in

22   its conclusions for two reasons.  First, the point of such an exercise is to select companies that are

23   close proxies for the valuation subject (in this case, Ruckus).  However, few of the companies

24   Morgan Stanley selected meet this goal.  As noted by analysts who cover the Company, Ruckus was

25   the largest pure play WLAN/Wi-Fi company after Hewlett-Packard acquired Aruba in 2015.  Also

26   noted by analysts, Juniper Networks was believed to be a potential acquirer because it lacks a Wi-Fi

27   component to its portfolio of products and solutions.  Cisco and Hewlett-Packard are both large,

28   diversified technology solutions providers and do not possess similar growth opportunities by virtue

of their size.  Moreover, Zebra Technologies derives the majority of its operating profit from barcodes and card printers, making it a challenging "comparable" company as well.  To the extent Morgan Stanley performed a benchmarking analysis to illustrate the (likely significant) differences in growth rates between Ruckus and the companies it selected as "comparable," this information was withheld from the 14D-9.

59.  Further, Morgan Stanley's *Comparable Companies Analysis* focused on applying valuation multiples to Ruckus based on its 2016 and 2017 forecasts, even though the Company itself acknowledged that market adoption of its "small cell technology would begin in the second half of fiscal year 2017."  14D-9 at 21.  As such, Morgan Stanley's selection of multiples does not account for the full value of this important growth opportunity.  The opportunity in small cell technology is so important for Ruckus that the very names of its financial projections (Management Case, Faster Small Cell and Slower Small Cell) imply that differences in assumptions related to its small cell business were the primary differences in the three scenarios presented.

60.  The Proposed Acquisition is being driven by the Board and members of management to secure material benefits for themselves as a result of the Proposed Acquisition, including the accelerated vesting and monetization of illiquid equity holdings in the Company and change-of-control severance payments, which will provide almost ***$70 million*** in cash alone to the Board and members of Ruckus's management.

**Preclusive Deal Protection Devices**

61.  To ensure Brocade, and only Brocade, acquires Ruckus, defendants included several deal protection devices in the Merger Agreement.  First, pursuant to the Merger Agreement, Purchaser has commenced the Exchange Offer.  The initial offer period of the Exchange Offer will expire on May 27, 2016.  The closing of the Merger is subject only to tender by the holders of a simple majority of the Company's common stock.  Ruckus and Brocade have announced their intent to effect the Merger, pursuant to §251(h) of the Delaware General Corporation Law, as a short-form merger – to cash out any shareholders who do not tender – without so much as a shareholder vote.

62.  Second, in return for her offer letter from Brocade, concurrently with the execution of the Merger Agreement, defendant Lo entered into the Tender and Support Agreement, pursuant to

1   which, among other things, and subject to the terms and conditions therein, defendant Lo agreed to

2   tender all shares beneficially owned by her into the Exchange Offer.  As Lo controls over 6.3% of

3   Ruckus's outstanding shares, defendants will only need tenders of less than 44% of all shares in

4   order to force the close of the Merger without a shareholder vote.

5          63.    Third, the deal protection devices in the Merger Agreement will preclude a fair sales

6   process for the Company and lock out competing bidders, and include: (i) a no-shop clause that will

7   preclude the Company from soliciting potential competing bidders; (ii) a matching rights provision

8   that would require the Company to disclose confidential information about competing bids to

9   Brocade and allow Brocade to match any competing proposal; and (iii) a termination and expense

10  fee provision that would require the Company to pay Brocade $50 million if the Proposed

11  Acquisition is terminated in favor of a superior proposal.  These provisions substantially and

12  improperly limit the Board's ability to act with respect to investigating and pursuing superior

13  proposals and alternatives, including a sale of all or part of Ruckus.

14  **The False and Misleading 14D-9**

15         64.    In order to encourage and obtain shareholder tenders in response to the Exchange

16  Offer, in contravention of §14(e) of the 1934 Act, defendants filed and disseminated to shareholders

17  the materially misleading 14D-9.  The 14D-9, which recommends that Ruckus shareholders tender

18  their shares to Brocade, omits and/or misrepresents material information about the potential and/or

19  actual conflicts of interest present in the process leading to the Proposed Acquisition, the Company's

20  inherent value, and the fairness analyses performed by the Company's financial advisor, Morgan

21  Stanley.  Without this material information, Ruckus shareholders are prevented from making a fully

22  informed decision as to the adequacy of the Exchange Offer and whether to tender their shares.

23  Specifically, the 14D-9 omits/or misrepresents the material information set forth below in

24  contravention of §14(e) of the 1934 Act.

25         65.    ***The Board's decision to retain Morgan Stanley even though it and its affiliates hold***

26  ***over 3.67 million shares of Parent common stock and hold $9.762 million in Parent notes.***  Page

27  16 of the 14D-9 states that the Board's Ad Hoc Committee determined to hire Morgan Stanley to

28  serve as its financial advisor, and at page 42 that Morgan Stanley or its affiliates may hold debt or

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934        - 15 -

equity securities of Ruckus or Parent.  But nowhere does the 14D-9 disclose that Morgan Stanley does in fact hold (and held throughout the process leading to the Proposed Acquisition) Parent debt and equity securities.  Nor does the 14D-9 disclose if or how the Board considered this conflict, and if so, why the Board chose to hire Morgan Stanley as its one and only financial advisor.  Without this information, shareholders cannot reasonably consider whether the Board's advisor was conflicted in giving its fairness opinion.

66.     ***Whether Morgan Stanley performed any benchmarking analysis for Ruckus in its Public Trading Comparables Analysis***.  In the description of Morgan Stanley's *Public Trading Comparables Analysis* on pages 34-36 of the 14D-9, defendants omit to disclose whether Morgan Stanley performed any benchmarking analysis for Ruckus in its *Public Trading Comparables Analysis*.  A benchmarking analysis is very important, as it provides context to the market analysis by the financial advisor.  For example, if a company's growth prospects are greater or less than the comparable companies' metrics, that would influence whether higher or lower valuation multiples are appropriate.  Without the information set forth above, shareholders are unable to assess whether the analysis was performed properly, and in turn, what weight, if any, to place on Morgan Stanley's fairness opinion.

67.     ***Whether Morgan Stanley valued Parent on a standalone basis***.  If it did perform standalone valuations of Parent, descriptions of the inputs and results are not disclosed in the 14D-9.  This is a material omission, as about 50% of the Proposed Acquisition consideration is in the form of Parent common stock, and as the 14D-9 (at 38) presents Morgan Stanley's highly speculative analyses of the value of the Proposed Acquisition consideration.

68.     ***The financial projections for each of the three Ruckus scenarios ((i) Management Case, (ii) Faster Small Cell, and (iii) Slower Small Cell) provided by Ruckus management and relied upon by Morgan Stanley for purposes of its analysis, for revenue (2020-2025 only), adjusted EBITDA (2020-2025 only), earnings per share (2020-2025 only), EBIT or D&A expense (2016-2025), capital expenditures (2016-2025), changes in net working capital (2016-2025), stock-based compensation expense (2016-2025), unlevered free cash flow (2016-2025), and percentage of total revenues attributable to the small cell technology under each projection scenario***.  At pages 43-44,

the 14D-9 sets forth some information about the three Ruckus scenarios that Morgan Stanley relied upon for purposes of its analysis for fiscal years 2016-2025.  The 14D-9 omits, however, in each of the three scenarios, financial projections for revenue (2020-2025 only), adjusted EBITDA (2020-2025 only), earnings per share (2020-2025 only), EBIT or D&A expense (2016-2025), capital expenditures (2016-2025), changes in net working capital (2016-2025), stock-based compensation expense (2016-2025), unlevered free cash flow (2016-2025), and percentage of total revenues attributable to the small cell technology under each projection scenario.  It is important to disclose these projection items used to build up to the disclosed cash flows.  Cash flow forecasts are a function of several elements.  Understanding these elements is critical to understanding whether the resulting cash flow forecast reflects a reasonable estimate of future financial performance.  Without the information set forth above, shareholders are unable to assess what weight, if any, to place on Morgan Stanley's fairness opinion.

69.  ***The financial projections for each of the three Parent scenarios ((i) Low Range, (ii) Mid-Range, and (iii) High Range) provided by Parent management and relied upon by Morgan Stanley for purposes of its analysis, for revenue (2019-2025 only), adjusted EBITDA (2019-2025 only), earnings per share (2019-2025 only), EBIT or D&A expense (2016-2025), capital expenditures (2016-2025), changes in net working capital (2016-2025), stock-based compensation expense (2016-2025) and unlevered free cash flow (2016-2025)***.  At pages 44-45, the 14D-9 sets forth some information about the three Parent scenarios that Morgan Stanley relied upon for purposes of its analysis for fiscal years 2016-2025.  The 14D-9 omits, however, in each of the three scenarios, financial projections for revenue (2019-2025 only), adjusted EBITDA (2019-2025 only), earnings per share (2019-2025 only), EBIT or D&A expense (2016-2025), capital expenditures (2016-2025), changes in net working capital (2016-2025), stock-based compensation expense (2016-2025) and unlevered free cash flow (2016-2025).  It is important to disclose these projection items used to build up to the disclosed cash flows.  Cash flow forecasts are a function of several elements.  Understanding these elements is critical to understanding whether the resulting cash flow forecast reflects a reasonable estimate of future financial performance.  Without the information set forth

above, shareholders are unable to assess what weight, if any, to place on Morgan Stanley's fairness opinion.

70.     Defendants were aware of the requirement under the federal securities laws to disclose the foregoing material information in the 14D-9 and acted with that knowledge in failing to ensure that this material information was disclosed in the 14D-9.  Absent disclosure of this material information, shareholders are unable to make an informed decision about whether to tender their shares or seek appraisal, and are thus threatened with irreparable harm.

71.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Ruckus with Brocade on terms preferential to Brocade and defendants, and detrimental to plaintiff and Ruckus's shareholders.  By providing the Individual Defendants with differential consideration, defendants are violating §14(d)(7) of the 1934 Act.  In disseminating a materially false and misleading 14D-9, the Individual Defendants and Ruckus are violating §14(e) of the 1934 Act.

72.     Defendants are moving quickly to consummate the Proposed Acquisition. ***According to the defendants, the Exchange Offer will expire on May 27, 2016***.  Moreover, the deal protection devices operate to block any other potential acquirers, rendering unlikely any alternative proposals to acquire Ruckus.  Consequently, immediate judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's shareholders.

73.     Plaintiff seeks to enjoin the Proposed Acquisition.

**CLASS ACTION ALLEGATIONS**

74.     Plaintiff brings this action individually and on behalf of a class of all the public shareholders of Ruckus (the "Class").  Excluded from the Class are the defendants and any directors or officers of Ruckus, as well as the members of their immediate families, and any entity in which any of them have a controlling interest and the legal representatives, heirs, successors or assigns or any such excluded party.

75.     The members of the Class are so numerous that joinder of all members is impracticable.

76.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class are being injured or legally damaged as a result of defendants' wrongful conduct.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by members of the Class may be relatively small, albeit significant, the expense and burden of individual litigation makes it virtually impossible for plaintiff and members of the Class individually to seek redress for the conduct alleged.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Relief concerning plaintiff's rights under the laws involved herein and with respect to the Class as a whole would be appropriate.

78.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are: (a) whether defendants violated the federal securities laws as alleged in this Complaint, including violating and/or participating in a scheme to violate §14(d)(7) of the 1934 Act and/or Rule 14d-10 promulgated thereunder or §14(e) of the 1934 Act; (b) whether the Individual Defendants are being offered consideration in violation of §14(d)(7) of the 1934 Act and/or Rule 14d-10 promulgated thereunder; (c) whether defendants have made false or misleading statements in the 14D-9 in violation of §14(e) of the 1934 Act; and (d) whether the members of the Class have sustained damages, and if so, the proper measure of such damages.

## COUNT I

### Claim for Violation of §14(e) of the 1934 Act
### Against Ruckus and the Individual Defendants

79.     Plaintiff repeats and realleges each allegation set forth herein.

80.     Section 14(e) of the 1934 Act requires full and complete disclosure in connection with tender offers.  Specifically, §14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any

tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

81.     The Individual Defendants violated §14(e) of the 1934 Act by making untrue statements of material fact in the 14D-9 and by failing to state material facts necessary in order to make the statements made in the 14D-9, in light of the circumstances under which they were made, not misleading.

82.     None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements made in the 14D-9 were true, without omissions of any material facts, and not misleading, and knew that the statements made therein were false and misleading or acted in reckless disregard for the truth.

83.     The 14D-9 was prepared, reviewed and/or disseminated by Ruckus and the Individual Defendants. The Individual Defendants, as directors and/or officers of Ruckus, allowed their names to be used in the 14D-9. The use of their names was not incidental, but rather material in connection with the recommendation that shareholders accept the Exchange Offer and tender their shares to Brocade. The use of their names lent substantial and material support to the recommendations.

84.     By reason of the foregoing, the Individual Defendants and Ruckus have violated §14(e) of the 1934 Act. Because of the false and misleading statements in the 14D-9, plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is prevented.

**COUNT II**

**Claim for Violation of §14(d)(7) of the 1934 Act**
**Against All Defendants**

85.     Plaintiff repeats and realleges each allegation set forth herein.

86.     As part of the Exchange Offer, defendants have agreed that all Board members and members of Ruckus management will receive additional consideration in an as yet to be defined amount that will not be offered or paid to Ruckus's other shareholders. Specifically, all Board members and members of Ruckus management will receive all cash for all of their vested options,

1  and defendants Lo and Hennessey will receive all cash for their unvested restricted and performance

2  stock units, while Ruckus's public shareholders are being forced to take uncollared Parent common

3  stock in the Proposed Acquisition.

4         87.     The additional and different consideration being paid to the Individual Defendants is

5  an integral part of the Exchange Offer and is being paid as consideration in return for the Individual

6  Defendants' endorsement and/or their agreement to cooperate with Brocade in consummating the

7  Exchange Offer.

8         88.     The Merger Agreement, defendants Lo's and Hennessy's offer letters with Brocade,

9  and Lo's Tender and Support Agreement with Brocade, which contain the improper agreement to

10  provide the Individual Defendants with differential, all-cash consideration in return for their

11  endorsement and/or their agreement to cooperate with Brocade in consummating the Exchange

12  Offer, violate the anti-discrimination provision, or "all holders – best price" rule, of §14(d)(7) of the

13  1934 Act and Rule 14d-10 promulgated thereunder by the SEC.  The Merger Agreement, defendants

14  Lo's and Hennessey's offer letters with Brocade, and Lo's Tender and Support Agreement with

15  Brocade were all negotiated at the same time, are being honored by Brocade as part of the Merger

16  Agreement and will become effective only upon the successful consummation of the Merger.

17         89.     Plaintiff and the members of the Class have been and will be irreparably harmed by

18  defendants' violations of §14(d)(7) of the 1934, and accordingly seek to enjoin these violations.

19                                       **PRAYER FOR RELIEF**

20        WHEREFORE, plaintiff, on plaintiff's own behalf and on behalf of the Class, prays for

21  judgment as follows:

22        A.     Determining that this action is a proper class action, designating plaintiff as Lead

23  Plaintiff and certifying plaintiff as a class representative under Rule 23(a) and (b)(3) of the Federal

24  Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

25        B.     Enjoining defendants, their agents, counsel, employees and all persons acting in

26  concert with them from consummating the Proposed Acquisition, unless and until the Company

27  adopts and implements a procedure or process to obtain the highest possible value for shareholders;

28

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934   - 21 -

1    C.    Declaring that defendants violated the federal securities laws as alleged herein by

2  disseminating the 14D-9 in connection with the Exchange Offer, which contains materially false and

3  misleading information about the Exchange Offer;

4    D.    Declaring that defendants violated the federal securities laws as alleged herein by

5  offering to pay and paying the Individual Defendants different and more valuable consideration in

6  connection with the Exchange Offer than the consideration to be paid to plaintiff and members of the

7  Class;

8    E.    Awarding plaintiff and the members of the Class compensatory damages in an

9  amount that may be proven at trial, together with interest thereon;

10    F.    Awarding plaintiff and the members of the Class pre-judgment and post-judgment

11  interest, as well as their reasonable attorneys', experts' and witness fees and other costs; and

12    G.    Awarding such other and further relief as this Court may deem just and proper,

13  including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach,

14  impound or otherwise restrict the defendants' assets to assure plaintiff has an effective remedy.

**JURY DEMAND**

16    Plaintiff demands a trial by jury.

17  DATED:  June 3, 2016            ROBBINS GELLER RUDMAN
                                      & DOWD LLP
18                                  DAVID T. WISSBROECKER
                                    EDWARD M. GERGOSIAN
19

20
                                          *s/ David T. Wissbroecker*
21                                  DAVID T. WISSBROECKER

22                                  655 West Broadway, Suite 1900
                                    San Diego, CA  92101
23                                  Telephone:  619/231-1058
                                    619/231-7423 (fax)
24
                                    JOHNSON & WEAVER, LLP
25                                  FRANK J. JOHNSON
                                    SHAWN E. FIELDS
26                                  600 West Broadway, Suite 1540
                                    San Diego, CA  92101
27                                  Telephone:  619/230-0063
                                    619/255-1856 (fax)
28

COMPLAINT FOR VIOLATIONS OF §14 OF THE SECURITIES EXCHANGE ACT OF 1934        - 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Deal\CPT Ruckus.docx

DocuSign Envelope ID: 1F7C48FA-9423-44F4-AF2B-C77C0D11CA3D

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Miguel Hussey ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  plaintiff holds 11 shares of Ruckus Wireless stock as of the date of the certification and was a holder of Ruckus Wireless at all relevant times.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of May, 2016.



Miguel Hussey

RUCKUS