UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL HUSSEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>RUCKUS WIRELESS, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-02991-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Docket No. 75 |

This is a securities fraud class action relating to the acquisition of Ruckus Wireless Inc. ("Ruckus") by Brocade Communications Systems, Inc. ("Brocade") in May 2016. Lead Plaintiff is the City of Pontiac General Employees' Retirement System, one of the shareholders of Ruckus. Defendants are as follows:

- Ruckus;
- Ruckus's Board of Directors (consisting of Selina Y. Lo (also President and CEO of Ruckus), Georges Antoun, Barton Burstein, Gaurav Garg, Stewart Grierson, Mohan Gyani, and Richard Lynch);
- Seamus Hennessy (Ruckus's CFO);
- Brocade;
- Stallion Merger Sub Inc. ("Merger Sub") (a wholly owned subsidiary of Brocade and the entity set up as the formal purchaser of Ruckus stock); and
- Morgan Stanley & Co. LLC ("Morgan Stanley") (Ruckus's financial advisor for the merger).

Previously, the Court granted a motion to dismiss filed by a majority of the defendants named above, but with leave to amend. Lead Plaintiff thus filed a second amended complaint

("SAC"). All Defendants named above now move for dismissal of the SAC.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendants motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the SAC, Lead Plaintiff alleges as follows.

Before the merger with Brocade, "Ruckus was a global supplier of advanced Wi-Fi solutions." SAC ¶ 43. At the end of December 2015, Ruckus's financial performance was strong and had exceeded the prior year's financial performance. *See* SAC ¶ 47. "Despite Ruckus' improving metrics and strong prospects, the Board was concurrently pursuing a sale of the Company." SAC ¶ 50.

Ruckus and Brocade first entered into merger discussions in or about August 2015. *See* SAC ¶ 54. (Prior to that, the companies had worked together with apparent success. *See, e.g.*, SAC ¶ 53.) Discussions continued through March 2016.

"On March 9, 2016, Brocade gave Ruckus its best and final offer . . . of $6.45 in cash and 0.75 shares of Brocade common stock (valued at the time of the offer at $14.06 per Ruckus share)." SAC ¶ 65 (emphasis added). The Ruckus Board accepted the offer on the same day. *See* SAC ¶ 65.

On April 6, 2016, the companies announced the merger agreement. The proposed merger would be effected through a tender offer. *See* SAC ¶¶ 2, 68.

The Ruckus Board recommended that shareholders tender their shares in a 14D-9 filed with the SEC. *See* SAC ¶ 3. In the 14D-9, Ruckus stated that the implied value of the merger consideration was $14.43 per Ruckus share "(based on the closing price of [Brocade] Common Stock on . . . the last trading day prior to the approval by the [Ruckus] Board of the Merger Agreement)." Defs.' RJN, Ex. 1 (14D-9, at 29). The closing price of Brocade stock at that point in time was $10.64. *See* Defs.' RJN, Ex. 1 (14D-9, at 34). The $14.43 merger consideration[1] was "an approximate premium of 44% based on the closing price per [Ruckus] Share of $10.00 on

---

[1] (0.75 x $10.64 [Brocade share]) + $6.45 [cash] = $14.43.

2

April 1, 2016." Defs.' RJN, Ex. 1 (14D-9, at 29); *see also* SAC ¶ 4.

The tender offer launched on April 29, 2016, and ended on May 27, 2016. Because enough shares were tendered (a majority),[2] the merger was completed on May 27, 2016, or shortly thereafter. *See* SAC ¶¶ 2, 69; *see also* RJN, Ex. 1 (14D-9, at 2) (providing that a majority of shares must be tendered).

As indicated above, at the time the parties entered into the merger agreement (March 9, 2016), the merger consideration for each Ruckus share had an implied valued of $14.06. *See* SAC ¶ 65. In the 14D-9 that Ruckus filed with the SEC, Ruckus stated that the implied value of the merger consideration was $14.43 per Ruckus share. *See* SAC ¶ 4. However, by the closing date of the tender offer (May 27, 2016), the merger consideration value had declined to $12.90 per Ruckus share. *See* SAC ¶ 65.

In its SAC, Lead Plaintiff has asserted both federal and state claims. With respect to the federal claims, the main claim is a violation of § 14(e) of the 1934 Securities Exchange Act.[3] Section 14(e) covers an untrue statement of material fact or omission of fact with respect to a tender offer. Section 14(e) provides in relevant part as follows:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e). In addition to the federal claims, Lead Plaintiff also brings a state claim for breach of fiduciary duty (against the individual defendants, Count V) and a related state claim for aiding and abetting (against Brocade and its Merger Sub, Count VI).

---

[2] Lead Plaintiff admits that, technically, a majority of shares were tendered – 58.3%. But, Lead Plaintiff argues, "[b]ased on the fact that Ruckus insiders held 8.5% of the Company's outstanding shares, fewer than a majority of independent stockholders supported the Acquisition." SAC ¶ 70. (58.3% – 8.5% = 49.8%.)

[3] Lead Plaintiff has asserted a § 14(e) claim against Ruckus and the individual defendants (Count I) as well as Morgan Stanley (Count II). Lead Plaintiff has also asserted derivative § 20(a) claims against the individual defendants (Count III) and Brocade and its Merger Sub (Count IV).

3

## II. DISCUSSION

A. Legal Standard

As the Court has before it a 12(b)(6) motion to dismiss, the *Twombly*/*Iqbal* standard is applicable. That is, the Court must evaluate the SAC for plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57).

For Plaintiffs' federal claims, more than just the *Twombly*/*Iqbal* standard must be met. In particular, the Private Securities Litigation Reform Act ("PSLRA") provides as follows:

> In any private action arising under this title [15 U.S.C. §§ 78a *et seq.*] in which the plaintiff alleges that the defendant –
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1); *see also Janas v. McCracken (in Re Silicon Graphics Sec. Litig.)*, 183 F.3d 970, 996 (9th Cir. 1999) (noting that, under the PSLRA, "a securities fraud complaint shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed'").

Moreover, the PSLRA has an additional requirement:

4

> [I]n any private action arising under this title [15 U.S.C. §§ 78a *et seq.*] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to *a strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). In its prior order granting the motion to dismiss the first amended complaint ("FAC"), the Court held that the state of mind required for a § 14(e) claim is scienter – *i.e.*, intent to deceive or deliberate recklessness. *See* Docket No. 62 (Order at 1). "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). In addition, a strong inference of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

B. Defendants' Arguments

In their motion to dismiss, Defendants challenge both the federal and state claims. As to the federal claims, Defendants' main arguments are that Lead Plaintiff has failed to sufficiently allege falsity, scienter, and loss causation. (There are additional arguments that are applicable to the derivative § 20(a) claims only.) As for the state claims, Defendants assert that the Court should decline supplemental jurisdiction if the federal claims are dismissed. Alternatively, Defendants argue that the state claims should be dismissed based on the doctrine of forum non conveniens. Finally, Defendants raise merits-based arguments in favor of dismissal of the state claims (*e.g.*, based on the business judgment rule).

For the reasons discussed below, the Court concludes that Lead Plaintiff has failed to plead a viable § 14(e) claim. Without a viable § 14(e) claim, the derivative § 20(a) claims also fail. And in the absence of a viable federal claim, the Court declines supplemental jurisdiction over the asserted state claims.

C. Section 14(e) Falsity

Lead Plaintiff's § 14(e) claim is, in a nutshell, that Defendants included a misleading

opinion statement in the 14D-9. *See generally Omnicare, Inc. v. Laborers District Council Construction Industrial Pension Fund*, 135 S. Ct. 1318 (2015) (providing the governing standard for falsity with respect to an opinion statement).

The allegedly misleading opinion statement was related to a financial analysis performed by Morgan Stanley, Ruckus's financial adviser. Morgan Stanley conducted a discounted cash flow ("DCF") analysis to determine what consideration a Ruckus shareholder would get if the Ruckus-Brocade merger were to take place. The DCF analysis "purported to show that the [merger] offered Ruckus stockholders greater value than if the Company remained a standalone enterprise." SAC ¶ 87.

Morgan Stanley opined that the value of the merger consideration was worth $17.61-$22.35 (Base Case Scenario – Midrange Forecast). *See* SAC ¶ 87; *see also* RJN, Ex. 1 (14D-9, at 38). But, according to Lead Plaintiff, Morgan Stanley – and thereafter the remaining defendants – omitted the fact that the $17.61-$22.35 value was based on an assumption that Brocade stock "standalone" (*i.e.*, without a merger) was worth **$13.58 to $19.52 per share**.[4] According to Lead Plaintiff, it was misleading to omit this assumption because the assumption overinflated the value of Brocade stock standalone as evidenced by, *e.g.*, the following:

- That, from May 27, 2016 (the day the merger was completed) through July 31, 2016, Brocade repurchased its own stock for an average of only **$9.08 per share**. *See* SAC ¶¶ 73, 90(a).
- That, in November 2016 (approximately five months after the merger was completed in May 2016), Broadcom agreed to acquire Brocade for only **$12.75 per share**. *See* SAC ¶ 90(b).

Lead Plaintiff maintains that, if the $13.58-$19.52 value of Brocade stock standalone had been disclosed in (and not omitted from) the 14D-9, then Ruckus stockholders would not have tendered their shares for the merger because Brocade stock standalone was not in fact worth that much.

---

[4] The SAC does not include any reference to the $13.58-$19.52 figure. Rather, the SAC makes reference to a figure of $14.88-$21.20. In its opposition, Lead Plaintiff states that this was a mistake. *See* Opp'n at 9-10.

6

The Court finds that Lead Plaintiff has failed to adequately plead a materially misleading omission for several reasons.

First, Lead Plaintiff focuses exclusively on the alleged omission from Morgan Stanley's Discounted Cash Flow analysis. However, it is important to put the DCF analysis in context. It was one of several models of financial analyses which informed Morgan Stanley's opinion as to the fairness of the other consideration to Ruckus shareholders. *See* RJN, Ex. 1 (14D-9, at 35-50).[5] Lead Plaintiff has not shown how the standalone share value of Brocade stock, which allegedly was omitted from the DCF analysis, was material to the overall multifaceted financial analysis.

Second, even if Morgan Stanley's DCF analysis were deemed central to its opinion as to the fairness of the merger, and the DCF analysis somehow overinflated the implied value of Brocade stock standalone (a fact not clearly established by Lead Plaintiff), Lead Plaintiff, at the hearing, effectively conceded that there was no problem with Morgan Stanley's bottom-line DCF valuation – $17.61-$22.35 per share for the merger consideration (Base Case Scenario). *See* SAC ¶ 87; *see also* RJN, Ex. 1 (14D-9, at 38). As it stated at the hearing, Lead Plaintiff did *not* take issue with how Morgan Stanley calculated the value of the merger consideration in its DCF analysis. *See generally* RJN, Ex. 1 (14D-9, at 38) (discussing in general terms how Morgan Stanley calculated the value of the merger consideration). Nor did it take issue with the cash flow projections used or the methodology employed by Morgan Stanley in its DCF analysis. If the value of the merger consideration ($17.61-$22.35) was correct or reasonable, the Court does not see how the implied value of Brocade stock standalone was material to a Ruckus shareholder in

---

[5] Although these other models are mentioned on the face of the 14D-9, Lead Plaintiff protests that the Court should not consider them. Lead Plaintiff asserts that a court may only take judicial notice of the existence of the 14D-9 and its contents – not any facts contained therein. Lead Plaintiff further argues that "the propriety of [the models] will be tested through fact discovery" and that, in any event, the models are "immaterial to the merits" of its claims." Docket No. 84 (Opp'n to RJN at 3-4).

The Court does not find Lead Plaintiff's arguments persuasive. First, for the reasons stated above, the other models are material to falsity; they provide context for Lead Plaintiff's challenge to the DCF analysis. Lead Plaintiff cannot rely centrally on one section of a document in his complaint and ignore adjacent pages which are directly related. To do so would violate the rule of completeness. Moreover, Lead Plaintiff cannot claim any prejudice. It does not challenge the accuracy or completeness of the other models.

7

deciding whether or not to tender her shares in exchange for that consideration.

Third, even if Lead Plaintiff did assert that the $17.61-$22.35 valuation for the merger consideration was in fact too high, there is nothing in the record to attribute that valuation to Brocade stock standalone being overvalued. Although Lead Plaintiff assumes that Morgan Stanley did a Brocade stock standalone valuation as part of its overall valuation of the merger consideration, there is no factual basis for that assumption. All that the 14D-9 states is as follows:

> Morgan Stanley . . . compared these per Share values [for Ruckus standalone] with the discounted cash flow value per Share value of the Offer Consideration as of April 1, 2016 that each shareholder of [Ruckus] would receive in the Offer and the Merger in exchange for a Share [*i.e.*, if the Ruckus-Brocade merger were to go through]. The value that would be received for each [Ruckus] Share was defined as the discounted cash flow value per share of the [Brocade] Common Stock, *after giving effect to the Merger and incorporating the value of certain synergy forecasts* . . . , multiplied by the 0.75 transaction exchange ratio, plus $6.45 of cash consideration per [Ruckus] Share.

RJN, Ex. 1 (14-D9, at 38) (emphasis added). As indicated by the italicized language above, Morgan Stanley did not do a Brocade standalone stock valuation. Rather, Morgan Stanley compared the value of Ruckus standalone stock to the value of stock for a *merged* Ruckus-Brocade company. The standalone value of Brocade stock does not appear to be an input into the DCF analysis. Instead, the DCF analysis was based on cash flow projections for 2016 through 2025 to which varying discount rates were applied. *See, e.g.*, RJN, Ex. 1 (14D-9, at 40-42).

Notably, Lead Plaintiff does not argue that Morgan Stanley should have performed a Brocade stock standalone valuation. While Lead Plaintiff did suggest at the hearing that Morgan Stanley must have performed a Brocade stock standalone valuation, it points to no evidence of that. Indeed, as Defendants pointed out at the hearing, it would make little sense for Morgan Stanley to do a Brocade stock standalone valuation because the point of the DCF analysis was to compare the value of Ruckus stock standalone to the value of a Ruckus-Brocade merged company. In other words, there was no need to do a Brocade stock standalone valuation because that was never a contemplated option for a Ruckus shareholder.

D.   Section 14(e) Scienter

For the reasons stated above, Lead Plaintiff has failed to adequately plead a materially

8

misleading omission, and therefore all Defendants are entitled to dismissal of the federal claims. However, even if Lead Plaintiff had adequately pled falsity, the Court would still grant Defendants' motion to dismiss on an independent ground – *i.e.*, Lead Plaintiff has failed to adequately plead scienter.

As to all Defendants other than Morgan Stanley, Lead Plaintiff has failed to adequately allege that these defendants knew or should have known that the implied Brocade stock standalone value was $13.58 to $19.52 per share (*i.e.*, overinflated). Notably, both in its papers and at the hearing, Lead Plaintiff admitted that it had to do a complex calculation to figure out that, based on the $17.61-$22.35 merger consideration value determined by Morgan Stanley, Brocade stock standalone had to be worth $13.58-$19.52. *See, e.g.*, Opp'n at 10 (stating that to get to the $13.58-$19.52 figure required "a complex DCF analysis on the post-tax cash synergies," *i.e.*, to isolate the Brocade stock standalone value). Nowhere in the SAC has Lead Plaintiff has alleged that any defendant did such a calculation, was shown such a calculation, or was equipped to engage in such a complex calculation. Nor is there anything in the 14D-9 suggesting such. At the hearing, Lead Plaintiff argued that these defendants must have been told of the Brocade stock standalone value when Morgan Stanley informed them of its DCF analysis. But, as noted above, that assumes that Morgan Stanley did a Brocade stock standalone valuation in the first place, and that assumption cannot reasonably be inferred based on the allegations in the SAC and the statements in the 14D-9. Furthermore, as discussed above, it is not implied in the methodology employed by Morgan Stanley in deriving the DCF analysis.

As for Morgan Stanley, while it may well have had the ability to do the complex calculation performed by Lead Plaintiff, there is still a problem with scienter – Lead Plaintiff assumes that Morgan Stanley did in fact do a Brocade stock standalone valuation. As noted, nothing in the SAC or 14D-9 indicates that Morgan Stanley considered Brocade standalone as an input (or even an output) in conducting its DCF analysis. Indeed, the 14D-9 indicates that the driving force in Morgan Stanley's DCF analysis was not current stock price of Brocade but rather Brocade's future income. *See, e.g.*, RJN, Ex. 1 (14D-9, at 37) ("Morgan Stanley performed a discounted cash flow analysis, which is designed to provide an implied value of a company by

9

calculating the present value of *the estimated future cash flows* and terminal value of such company.") (emphasis added); *id.* (14D-9, at 38) ("Morgan Stanley utilized estimates from the [Brocade] *Forecasts* . . .and the Synergies for purposes of its discounted cash flow analysis of the combined [Brocade and Ruckus] discounted cash flow analysis. . . . The [Brocade] Forecasts through 2018 were based on projections prepared by [Brocade] for fiscal years 2016 and 2017 and a financial model prepared by [Brocade] for fiscal year 2018 . . . and the estimates for calendar years 2019 through 2025 represented an extrapolation of 2018 estimates.") (emphasis added). Absent a showing that a standalone valuation of Brocade was performed by Morgan Stanley, no showing of scienter adequate to satisfy PSLRA has been made.

E. <u>Supplemental Jurisdiction</u>

Based on Lead Plaintiff's failure to plead falsity and scienter, the Court dismisses the § 14(e) claims as well as the § 20(a) claims which flow therefrom. The only remaining claims are state claims (related to breaches of fiduciary duty) over which the Court has supplemental jurisdiction. Having dismissed the federal claims, the Court, in the exercise of its discretion, declines supplemental jurisdiction over the state claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction").

### III. <u>CONCLUSION</u>

Defendants' motion to dismiss the federal claims is granted. The dismissal is with prejudice. Lead Plaintiff has already been given one opportunity to cure with respect to both falsity and scienter and, in any event, Lead Plaintiff has failed to show that it could plead allegations to cure any of the deficiencies identified above. The Court declines to exercise supplemental jurisdiction over the state claims.

///
///
///
///
///

The Clerk of the Court is directed to enter judgment in accordance with the above and close the file in this case.

This order disposes of Docket No. 75.

**IT IS SO ORDERED**.

Dated: June 29, 2017

_____
EDWARD M. CHEN
United States District Judge